**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No. CR-22-111-GF-BMM** |
| Plaintiff, | |
| vs. | **ORDER** |
| JOSHUA DANIEL WILSON, | |
| Defendant. | |

**INTRODUCTION**

The Court sentenced Defendant Joshua Daniel Wilson ("Wilson") on September 21, 2023, to 168 months' imprisonment followed by a term of supervised release of five years. (Doc. 63.) The Court ordered this sentence to run concurrent with the sentences imposed in Lewis & Clark County District Causes BDC-09-113, CDC-14-434, and ADC-09-283. (*Id*.) Wilson's projected release date is October 19, 2035. *See* Inmate Locator, https://www.bop.gov/inmateloc (accessed June 3, 2026). Wilson previously filed a motion for compassionate release on April 15, 2025. (Doc. 79.) Wilson filed a supplemental motion for compassionate release on September 5, 2025. (Doc. 93.) Wilson's motion was denied without prejudice as untimely on October 10, 2025, for not first exhausting his administrative remedies. *United States*

1

*v. Wilson*, No. CR 24-20-GF-BMM, 2025 U.S. Dist. LEXIS 201304, at *6 (D. Mont. Oct. 10, 2025).

Wilson filed a second motion for compassionate release on January 12, 2026. (Doc. 99.) Wilson filed a supplemental motion for compassionate release on April 13, 2026. (Doc. 106.) The Government opposes Wilson's motion. (Doc. 110.) The Government argues that Wilson does not present "extraordinary and compelling" reasons justifying "permanent premature release from custody." (*Id.* at 2.) The Government also argues that releasing Wilson would be unjustified under 18 U.S.C. § 3553(a) factors. (*Id.*)

## FACTUAL BACKGROUND

UPS employees in Billings discovered a package in May 2021 that was shipped from California that was damaged during shipping and was spilling loose coffee grounds. (Doc. 110 at 3.) The UPS employees opened the package and found suspected methamphetamine inside. (*Id.*) The package was intended for Sabrina Olson in Great Falls. (*Id.*) Officers conducted a controlled delivery of the package to Olson at her home several days later. (*Id.*) Olson admitted to being involved with the shipment of methamphetamine. (*Id.*) Messages on Olson's cellphone revealed Wilson intended to sell the methamphetamine that was delivered to Olson's home. (*Id.*)

Officers observed Wilson at Olson's home as they prepared to search the property. (*Id*. at 3.) Wilson was under supervision with the Montana Department of Corrections for felony drug convictions at the time. (*Id*.) Wilson later admitted to his probation officer that he was again selling methamphetamine and admitted to purchasing approximately six pounds of methamphetamine for resale. (*Id*.) The total weight of methamphetamine found in the UPS package was 793.8 grams of actual methamphetamine. (*Id*.) Wilson pleaded guilty to conspiracy to possess with intent to distribute methamphetamine. (*Id*.)

## DISCUSSION

### I.    Availability of Relief Under 18 U.S.C. § 3582

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). The Court may modify a term of imprisonment upon motion of a defendant if the Court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must consider the factors set forth in 18 U.S.C. § 3553(a) and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission" when the Court is considering the reduction of a

defendant's term of imprisonment. *Brown*, 411 F. Supp. 3d at 448 (citing 18 U.S.C. § 3582(c)(1)(A)).

Congress has not defined the circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law instead directs the United States Sentencing Commission ("USSC") to issue a policy statement describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021).

Section 1B1.13 of the United States Sentencing Guidelines ("USSG"), titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"), previously only provided a policy statement for motions filed by the BOP director. Amendments to USSG § 1B1.13 took effect on November 1, 2023. "The amendment revises §1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions." USSC, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, at 7, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

The amendments provide that:

Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
(1) Medical Circumstances of the Defendant.—

. . .

   (B) The defendant is—
        (i) suffering from a serious physical or medical condition,

        (ii) suffering from a serious functional or cognitive impairment, or
        (iii) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

. . .

(5) Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSC, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*, at 3.

The catchall "other reasons" provision reflects the USSC's belief that "guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts." (*Id.* at 10.) The "unusually long sentence" provision applies where there have been non-retroactive changes to the law. (*Id.*) This provision recognizes that "[o]ne of the expressed purposes of section 3582(c)(1)(A) when it was enacted in 1984 was to provide a narrow avenue for judicial relief from unusually long sentences." (*Id.* at 11 (citing S. REP. NO. 98–225 (1983)); USSG § 1B1.13(b).

### A. Exhaustion of Remedies

Wilson previously filed a motion for compassionate release on April 15, 2025. (Doc. 79.) The Court denied Wilson's motion as untimely on October 10, 2025, as he failed to first exhaust his administrative remedies. *Wilson*, 2025 U.S. Dist. LEXIS 201304, at *6.

Wilson contends that he applied for compassionate release on December 9, 2025. (Doc. 99 at 3.) Wilson presents no evidence of this request or of the warden's response, or lack of response. It proves unclear if the warden responded, or more specifically, denied that request and if Wilson appealed such a denial. Wilson has

exhausted his administrative remedies, as more than 30 days have elapsed since the warden received his request. 18 U.S.C. § 3582(c)(1)(A). The United States concedes that Wilson's current motion is timely. (Doc. 110 at 4.)

## B. Reason for Reduction

### a. Medical Condition

Wilson contends that he suffers from "schizophrenia, trauma based chronic [post-traumatic stress disorder ("PTSD")] . . . sleep apnea, insomnia, severe depression, and anxiety." (Doc. 99 at 6, Doc. 106 at 2.) Wilson further states he has a "[traumatic brain injury ("TBI")], keracotanus, and hearing loss." (*Id.*) Wilson claimed further issues between his first and second motions for compassionate release. Wilson asserts that at various times between FCI Victorville and FCI Terminal Island his medication schedule for schizophrenia and seizures were incorrect in some fashion, leading to issues such as falling off the top bunk bed and suffering head trauma. (Doc. 106 at 7-8.) Wilson alleges that he was incorrectly downgraded from Care Level 3 to Care Level 1 when he moved to a new facility. (*Id.* at 8.) Wilson alleges that he was sexually and physically assaulted, and that the Bureau of Prisons ("BOP") did not provide any psychological care following his claims of sexual assault. (*Id.*) Wilson asserts that his medical requests have repeatedly been denied and that he has received inadequate healthcare such as not seeing an ophthalmologist or having a functioning CPAP machine. (*Id.* at 8-9.)

Wilson claims that BOP staff are retaliating against him for his first request for compassionate release. (*Id*. at 9.)

The Government argues that medical records show BOP staff properly and consistently have given Wilson medical attention for various issues throughout his time in custody. (Doc 110 at 7-8.) The Government contends that Wilson fails to demonstrate how these conditions substantially diminish his ability to care for himself in prison. (Doc. 110 at 7.) The Government notes that Wilson's PTSD appears to derive from his time in the Navy and reportedly hearing his friend commit suicide over the phone. (*Id*. at 7.) The Government further notes that Wilson's sister claims that Wilson began struggling with his mental health disorders after he began abusing drugs in his 20's. (*Id*. at 8.)

Wilson has a documented history of various medical issues tracked by the BOP and included in his Pre-Sentence Report ("PSR"). These medical issues include the following: he meets the diagnostic criteria for bipolar disorder and chronic PTSD; his sleep study results provide an impression of "Very Severe Obstructive Sleep Apnea"; and he has "keratoconus" that affects both of his eyes. (Doc. 106 at 9-10.) Wilson's past instances of losing consciousness have been documented, but none of the incidences were reported as being caused by a seizure. (*Id*. at 11.) Wilson was treated for any injuries after each incident. (*Id*.) Documents indicate that Wilson has declined medical intervention in the past, such including one occasion where he

8

denied specified medications for both medical and mental health conditions. (*Id.* at 12.) Documents also indicate that Wilson is prescribed, at least as of December 2025, medications for hyperlipemia, bipolar disorder, and epilepsy/seizure disorder. (*Id.* at 13.) The Court finds that Wilson's medical conditions, including schizophrenia, bipolar disorder, PTSD, insomnia, depression and anxiety, do not rise to the level of "extraordinary and compelling" circumstances warranting a significant sentence reduction pursuant to 18 U.S.C. §3582(c)(1)(A) and USSG §1B1.13(b)(1) at this time. The Court determines, however, that Wilson presents sufficient "extraordinary and compelling" circumstances as they pertain to his medical conditions to warrant a slight reduction in his sentence.

The Court knew of Wilson's bipolar disorder, chronic PTSD, severe sleep apnea, and keratoconus, among other conditions, at the time of sentencing. The Court considered these conditions at the time of sentencing in order to determine an appropriate sentence for Wilson. "The Sentencing Commission has stated, [however, that] 'an extraordinary and compelling reason *need not have been unforeseen* at the time of sentencing in order to warrant a reduction in the term of imprisonment.'" *United States v. Burke*, 2024 WL 3829969, at *21 (D. New Mexico) (citing USSG §1B1.13 (c)) (emphasis added).

The Court determines that Wilson's conditions currently present extraordinary and compelling reasons to justify a minimal sentence reduction. The

Court remains concerned about Wilson's alleged refusals to accept medical care, including medications for his mental health conditions. The Court encourages Wilson to take advantage of the medical resources available to him in BOP custody. The Court also recognizes that Wilson has moved facilities several times already which likely impacts his access to care and the consistency of his medical treatment.

### b.  Other Reasons: Alleged Assault

Wilson alleges that he was sexually assaulted and physically abused by prison staff. (Doc. 99 at 5.) Wilson contends that BOP staff did not adequately address his Prison Rape Elimination Act ("PREA") complaint. (Doc. 106 at 13.) Wilson further contends that BOP staff repeatedly moved him to new facilities to undermine his efforts to litigate this complaint. (*Id.*)

The Government argues that Wilson has no evidence to substantiate his claims of sexual assault and physical abuse. (Doc. 110 at 9.) The Government points to Wilson providing "no comment" on his sexual and physical assault allegations. (*Id.*) The Government cautions the Court to exercise care with Wilson's allegations as they point to hallucinations and paranoia as common symptoms of bipolar and schizophrenia disorders. (*Id.*) The Government additionally urges the Court not to grant Wilson's motion for compassionate release as Wilson failed to provide any evidence to substantiate his claims of assault. (*Id.*) The Court finds that Wilson's allegations of sexual and physical assault by BOP staff do not rise to the level of

"extraordinary and compelling" circumstances warranting a sentence reduction pursuant to 18 U.S.C. §3582(c)(1)(A) and USSG §1B1.13(b)(4). The Court notes that Wilson's allegations need further evidence to justify judicial action at this point. The Court again encourages Wilson to access the administrative remedies available to him.

### c.  Release Plan

Wilson asks the Court for a sentence reduction. (Doc. 99 at 1.) Wilson argues that if released, he would live in Helena, Montana. (*Id.* at 9.) Wilson argues that he has a 100% permanent and total disability rating from the U.S. Department of Veterans Affairs ("VA") and would be able to access medical care through the VA. (*Id.* at 9-10.) Wilson argues that if released, he would work as a merchandiser at Lehrkinds, Inc. in Helena, Montana. (*Id.* at 9.)

### d.  The 18 U.S.C. § 3553(a) factors

Wilson asks the Court to grant his motion for compassionate release primarily based on his ongoing struggles with "schizophrenia, trauma based chronic PTSD . . . sleep apnea, insomnia, severe depression, and anxiety" which substantially diminish his ability to provide self-care in prison and to which he is not expected to recover. (Doc. 106 at 2 and 5, Doc. 99 at 6 citing 18 U.S.C. §1B1.13(b)(1)(B).) Wilson contends that he is not receiving adequate medical/mental health treatment from BOP for his health struggles. (Doc. 106 at 13.) Wilson further argues that

compassionate release would be appropriate due to BOP custodial staff allegedly sexually abusing him. (Doc. 106 at 2, Doc. 99 at 5 citing 18 U.S.C. §1B1.13(b)(5).) Finally, Wilson asserts that compassionate release is necessary due to him being the only available caregiver to care for a loved one that has become incapacitated. (Doc. 99 at 5 citing 18 U.S.C. §1B1.13(b)(3)(B)–(D).)

The Government asserts that Wilson presents no evidence to substantiate his claims of sexual assault and physical abuse. (Doc. 110 at 9.) The Government further asserts that insufficient evidence exists to confirm Wilson's claim that he cannot manage his medical condition while in custody. (*Id.* at 10.) The Government argues that the severity of Wilson's crime of distributing methamphetamine represents a serious offense that deserves just punishment. (*Id.*)

The Court finds that a 156-month term of imprisonment is just punishment for Wilson's offense and is necessary to assist in deterrence, to promote respect for the law, and to protect the public. 18 U.S.C. §3553(a)(1). The Court recognizes that Wilson presents serious medical concerns, particularly as they relate to his mental health. The Court further acknowledges that Wilson has participated in several education programs while in BOP custody and applauds him for his efforts at bettering himself while in custody. The Court additionally sees that transferring facilities numerous times may burden an inmate and lessen his access to consistent

and effective medical care. The Court concludes that, for these reasons, a small sentence reduction proves appropriate.

## CONCLUSION

The Court finds that Wilson's medical conditions rise to the level of extraordinary and compelling circumstances warranting a slight sentence reduction. The Court finds that Wilson's medical problems likely do not prevent him from being able to care for himself within a prison setting. Wilson has legitimate medical concerns. Wilson has presented insufficient evidence, however, that the medical care provided to him by the BOP is wholly inadequate. The Court additionally remains concerned about Wilson's ability to manage his medical issues, and particularly his mental health problems, outside custody. The Court further recognizes the challenges presented in receiving adequate healthcare, and particularly mental health care, in a custodial setting.

The Court concludes that Wilson's allegations of sexual and physical assault by BOP staff need further evidence to justify judicial action at this point. The Court remains concerned about the role that Wilson's mental health issues may play in his perception of these alleged events. The Court additionally determines that Wilson's claim that he is the only available caregiver to care for an incapacitated loved one proves unpersuasive. It appears that Wilson is referencing his recently deceased

father. (Doc. 106 at 15.) Wilson has provided no evidence to substantiate this claim, and his sister stated that Wilson's assistance was not required. (*Id*.)

For these reasons, the Court will reduce Wilson's sentence to 156 months. The Court suggests Wilson file a new request should his health conditions deteriorate or should he possess new evidence to support his claims.

## ORDER

Accordingly, **IT IS ORDERED** that Wilson's motion for compassionate release (Doc. 99) is **GRANTED in part** and **DENIED in part**. The Court reduces Wilson's sentence from 168 months to 156 months. Wilson's period of supervised release following his custodial term remains unchanged.

DATED this 3rd day of June, 2026.

_____
Brian Morris, Chief District Judge
United States District Court